# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERITY INVESTIGATIONS, LLC, <br><br> *Plaintiff/Relator,* <br><br> v. <br><br> QUALIPAC AMERICA, CORP., POCHET DU COURVAL AMERICA, INC., <br><br> *Defendants.* | Case No. _____ <br><br> **ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729** *et seq.* <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **DO NOT PLACE IN PRESS BOX** <br><br> **Jury Trial Demanded** |

## *QUI TAM* COMPLAINT

### I. INTRODUCTION

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $500 thousand (plus mandatory trebling) that Defendants wrongfully obtained in the form of federal guaranteed loans by falsely certifying that they had fewer than 300 employees and that they were not owned by an entity that has significant operations in China. Those loans were later forgiven, and the federal government paid the bill.

2. The loans in question were provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act." 15 U.S.C. § 636(a)(37).

3. In early 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans. This case involves a false application for a Second Draw PPP loan.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[1]

5. The Second Draw PPP loans created additional criteria that an entity with "significant operations" in the People's Republic of China could not own more than 20 percent of the small business applicant.

---

[1] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

2

6. Defendants falsely certified to the SBA that (1) they and their affiliates had 13 and 9 employees and (2) that they were not a business concern owned or held by an entity with significant operations in China. As a direct result of those false statements, Defendants obtained Second Draw PPP loans in the amount of $280,000 and $220,000, which were later forgiven.

7. Relator is an outside investigative company that detected Defendants' fraud by reviewing the Defendants' and their affiliates' sustainability reports and website information. That information demonstrates that Defendants and their affiliates had more than 300 employees during the relevant time period.

## II. THE PARTIES

8. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

9. Defendant Qualipac America, Corp. is a New Jersey corporation with its principal place of business in Woodland Park, New Jersey.

10. Defendant Pochet Du Courval America, Inc. is a Delaware corporation with its principal place of business in Woodland Park, New Jersey.

## III. JURISDICTION AND VENUE

11. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

12. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

13. Venue is proper, and this Court has personal jurisdiction over Defendants, because Defendants are "found" in this District. 31 U.S.C. § 3732(a).

## IV. THE FALSE CLAIMS ACT

14. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

15. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

16. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

17. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

18. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

19. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

20. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

21. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

22. The FCA broadly defines a "claim" as "any request or demand ... for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

23. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. NO "PUBLIC DISCLOSURE" AND RELATOR IS AN ORIGINAL SOURCE

24. On information and belief, no "public disclosure" has been made of Defendants' false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

25. On information and belief, Defendants' fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

26. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

27. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transactions described herein. Among other things, Relator has

"connected the dots" between (a) Defendants' and Defendants' affiliates' sustainability reports and website information, and (b) Defendants' false certifications for their Second Draw PPP loans.

28.  Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transactions.

## VI. THE SECOND DRAW PPP LOAN PROGRAM

29.  To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[2] 15 U.S.C. § 636(a)(37)(A)(iv).

30.  The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[3] and in the online "Frequently Asked Questions" document available on the website.[4]

31.  The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[5]

32.  The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[6]

33.  The SBA required borrowers to submit a borrower application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

---

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.
[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).
[4] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders (as of March 3, 2021).
[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders at 29 (as of March 3, 2021).
[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29 (as March 3, 2021).

34. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

35. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

36. For the Second Draw PPP loans, Congress stated that "eligible entity . . . does not include . . . any business concern or entity for which an entity . . . that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

37. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

38. The SBA Form 2483-SD also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

7

39. The SBA guaranteed 100% of the outstanding balance of Defendants' Second Draw PPP loans. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. DEFENDANTS FALSELY CERTIFIED TO THE SBA THEIR COMPLIANCE WITH THE SECOND DRAW PPP LOAN SIZE REQUIREMENTS

### A. BACKGROUND: DEFENDANTS AND THEIR AFFILIATES

40. Defendant Qualipac America, Corp. ("Qualipac USA") is a New Jersey corporation with its principal place of business in Woodland Park, New Jersey.[7]

41. Qualipac USA can be validly served with process at 1 Garret Mountain Plz. Ste 501, Woodland Park, NJ 07424.[8]

42. Defendant Pochet Du Courval America, Inc. ("Pochet USA") is a Delaware corporation with its principal place of business at Woodland Park, New Jersey.[9]

43. Pochet USA can be validly served with process at 19 Kris Ct., Newark, DE 19702.[10]

44. Qualipac USA and Pochet USA are part of Pochet S.A. ("Groupe Pochet"), headquartered in Clichy, France.[11] Groupe Pochet is a conglomerate, engaged in the business of glass bottling, plastics and metalwork, accessories, and premium decoration.[12]

45. Groupe Pochet's 2021 corporate social responsibility report lists the entities that are part of Groupe Pochet, including:[13]

---

[7] Groupe Pochet's Website – Qualipac USA and Pochet USA, https://www.groupe-pochet.fr/en/our-company-in-the-world/qualipac-america-pochet-du-courval-america/.
[8] New Jersey, Division of Revenue and Enterprise Services, Qualipac America, Corp., https://www.njportal.com/dor/businessnamesearch/.
[9] Groupe Pochet's Website – Qualipac USA and Pochet USA, https://www.groupe-pochet.fr/en/our-company-in-the-world/qualipac-america-pochet-du-courval-america/.
[10] Delaware, Department of State, Pochet Du Courval America, Inc., https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx.
[11] Groupe Pochet, *CSR 2021*, at Pages 12-13, available at https://www.groupe-pochet.fr/en/news/?_publication_category=sustainable-report.
[12] Groupe Pochet's Website – Group, https://www.groupe-pochet.fr/en/the-group/.
[13] Groupe Pochet, *CSR 2021*, at Pages 12-13, available at https://www.groupe-pochet.fr/en/news/?_publication_category=sustainable-report.

8

      i. Qualipac America, located in the United States;

      ii. Pochet du Courval, located in France;

      iii. Qualipac, located in France;

      iv. Qualipac Aluminium, located in France;

      v. Qualipac Chartres, located in France;

      vi. Qualifpac Aurillac, located in France;

      vii. Solev, located in France;

      viii. Qualipac America, located in the United States;

      ix. Pochet du Courval America, located in the United States;

      x. Pochet do Brasil, located in Brazil;

      xi. Qualipac China, located in China;

      xii. Qualimetal, located in China; and

      xiii. Aura, located in China.

46. On information and belief, Defendants Qualipac USA and Pochet USA, and the other entities listed in ¶ 45, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

### B. QUALIPAC USA'S FALSE STATEMENT TO OBTAIN A SECOND DRAW PPP LOAN

47. In 2020, Qualipac USA submitted a borrower application for a First Draw PPP loan in the amount of $291,670 by lender JPMorgan Chase Bank NA.

48. On or about March 18, 2021, the U.S. government forgave the majority of Qualipac USA's First Draw PPP loan in the amount of $274,999.53.

49. In 2021, Qualipac USA applied for a Second Draw PPP loan.

50. Qualipac USA submitted its borrower application form, SBA Form 2483-SD, to JPMorgan Chase Bank NA at 1111 Polaris Pkwy., Columbus, OH 43240.

51. In its Form 2483-SD, Qualipac USA listed its address as 1 Garret Mountain Plz Ste 501, Woodland Park, NJ 07424.

52. In its SBA Form 2483-SD, Qualipac USA represented that it and its affiliates had 13 employees—under the 300-employee limit needed to be eligible to apply.

53. Qualipac USA's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Qualipac USA and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

54. Qualipac USA deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Qualipac USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

55. Qualipac USA also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

56. Qualipac USA's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Qualipac USA's parent company has significant operations in China.

57. Qualipac USA deliberately ignored the fact that its parent company has significant operations in China that made Qualipac USA ineligible for a Second Draw PPP loan. Qualipac USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

58. On or about March 25, 2021, Qualipac USA was approved for a Second Draw PPP loan in the amount of $280,000 by lender JPMorgan Chase Bank NA.

59. The U.S. government paid lender JPMorgan Chase Bank NA a lender's processing fee of 5% of the $280,000 loan, in the amount of $14,000.[14]

60. On or about December 14, 2021, the U.S. government forgave 100% Qualipac USA's Second Draw PPP loan, plus interest, in the amount of $281,997.02.

### C. POCHET USA'S FALSE STATEMENT TO OBTAIN A SECOND DRAW PPP LOAN

61. In 2020, Pochet USA submitted a borrower application for a First Draw PPP loan in the amount of $208,332 by lender JPMorgan Chase Bank NA.

62. On or about March 18, 2021, the U.S. government forgave 100% of Pochet USA's First Draw PPP loan, plus interest, in the amount of $210,027.71.

63. In 2021, Pochet USA applied for a Second Draw PPP loan.

64. Pochet USA submitted its borrower application form, SBA Form 2483-SD, to JPMorgan Chase Bank NA at 1111 Polaris Pkwy., Columbus, OH 43240.

65. In its Form 2483-SD, Pochet USA listed its address as 1 Garret Mountain Plz., Woodland Park, NJ 07424.

66. In its SBA Form 2483-SD, Pochet USA represented that it and its affiliates had 9 employees—under the 300-employee limit needed to be eligible to apply.

67. Pochet USA's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Pochet USA and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

68. Pochet USA deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw

---

[14] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

PPP loan. Pochet USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

69. Pochet USA also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

70. Pochet USA's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Pochet USA's parent company has significant operations in China.

71. Pochet USA deliberately ignored the fact that its parent company has significant operations in China that made Pochet USA ineligible for a Second Draw PPP loan. Pochet USA signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

72. On or about April 20, 2021, Pochet USA was approved for a Second Draw PPP loan in the amount of $220,000 by lender JPMorgan Chase Bank NA.

73. The U.S. government paid lender JPMorgan Chase Bank NA a lender's processing fee of 5% of the $220,000 loan, in the amount of $11,000.[15]

74. On or about December 14, 2021, the U.S. government forgave 100% of Pochet USA's Second Draw PPP loan, plus interest, in the amount of $221,413.38.

D. **EVIDENCE OF NUMBER OF EMPLOYEES**

75. In its SBA Form 2483 and SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

---

[15] Paycheck Protection Program (PPP) Information Sheet: Lenders,
https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

76. On September 16, 2021, Groupe Pochet's website indicated that Defendants' corporate group collectively had approximately 4,000 employees in 2019.[16]

77. Groupe Pochet's 2021 corporate social responsibility report indicates that Defendants' corporate group had 3,797 employees worldwide in 2020.[17]

78. On November 28, 2022, Groupe Pochet's website indicated that Defendant's corporate group collectively had approximately 3,700 employees.[18]

79. If Defendants Qualipac USA and Pochet USA had counted their affiliates' employees in their Second Draw PPP loan applications, they would have reported far more than 300 employees.

80. On information and belief, Defendants' and their affiliates' payroll records from 2019, 2020, and 2021 will confirm what Defendants always knew—that Defendants and their affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

E. **EVIDENCE OF SIGNIFICANT OPERATIONS IN CHINA**

81. Defendants are owned by Groupe Pochet.

82. Groupe Pochet owns and controls numerous subsidiaries in the People's Republic of China, as listed in ¶ 45, *supra*.

83. Thus, Defendants' parent has significant operations in China, thereby disqualifying Defendants from the Second Draw PPP loan program.

---

[16] Groupe Pochet's Website – Group, https://web.archive.org/web/20210916234814/http://www.groupe-pochet.fr/le-groupe/#!/chiffres-cles (September 16, 2021, Wayback Machine).
[17] Groupe Pochet, *CSR 2021*, at Page 16, available at https://www.groupe-pochet.fr/en/news/?_publication_category=sustainable-report.
[18] Groupe Pochet's Website – Group, https://web.archive.org/web/20221128124734/https://www.groupe-pochet.fr/le-groupe/ (November 28, 2022, Wayback Machine).

## FIRST CAUSE OF ACTION

### Submitting False Claims for Payment
### 31 U.S.C. § 3729(a)(1)(A)

84. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

85. Each Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of a Second Draw PPP loan.

86. Defendants' knowingly false claims in their SBA Form 2483 and/or SBA Form 2483-SD were material to the lender's decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive those loans and repay the lender.

87. But for Defendants' knowingly false claims, the lender would not have issued the loans, and the SBA would not have forgiven them.

88. The Second Draw PPP loans that Defendants obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

89. The Second Draw PPP loan that Defendants obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

90. The Government later reimbursed the lender 100% of the amounts of Defendants' Second Draw PPP loans, with interest.

14

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

91. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

92. Each Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, their SBA Form 2483-SD and their included certifications—to support false claims submitted to the lender for approval of a Second Draw PPP loans.

93. Each Defendants' knowingly false records and statements were material to the lender's decisions to issue the Second Draw PPP loans and were material to the SBA's decisions to forgive that loan and repay the lender.

94. But for Defendants' knowingly false records and statements, the lender would not have issued the loans, and the SBA would not have forgiven them.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money
### 31 U.S.C. § 3729(a)(1)(G)

95. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

96. Defendants violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding Defendants' obligation to pay or transmit money to the SBA—namely, the money Defendants received from the SBA in forgiveness for Defendants' Second Draw PPP loans.

97. Defendants knew they improperly received money from the SBA when the SBA forgave Defendants' Second Draw PPP loans.

98. Defendants had an obligation to pay back the SBA the full amount Defendants received in forgiveness of the Second Draw PPP loans.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendants for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loans and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Date: October 1, 2025

Respectfully submitted,

Jeffrey S. Jacobson
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas
43rd Floor
New York, New York 10036
Telephone: (212) 248-3191
Facsimile: (212) 248-3141
jeffrey.jacobson@faegredrinker.com

Stephen Shackelford, Jr. (*to seek pro hac vice*)
Steven M. Shepard (*to seek pro hac vice*)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
sshackelford@susmangodfrey.com
sshepard@susmangodfrey.com

*Attorneys for Relator Verity Investigations, LLC*